UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARENA RESTAURANT AND LOUNGE LLC, et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>SOUTHERN GLAZER'S WINE AND SPIRITS, LLC, et al.,<br><br>          Defendants. | Case No. 17-CV-03805-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 36 |

Plaintiffs Arena Restaurant and Lounge LLC, Pacifica Restaurants, LLC, Vine and Barrel LLC, and Daniel Flores ("Plaintiffs") filed this putative class action against Southern Glazer's Wine and Spirits, LLC and Southern Glazer Wine & Spirits of America, Inc. ("Defendants"). Before the Court is Defendants' motion to dismiss the second amended complaint. Having considered the parties' briefs, the relevant law, and the record in this case, the Court GRANTS the motion to dismiss.

## I.     BACKGROUND

### A.     Factual Background

Plaintiffs accuse Defendants, which are liquor wholesalers, of a range of anticompetitive

behavior. As context for their claims, Plaintiffs explain that the Federal Alcohol Administration Act (27 U.S.C. § 201, *et seq.*) was enacted in 1935 to establish a regulatory scheme for the liquor industry. ECF No. 30 ("SAC") ¶ 36. This regulatory scheme created a three-tiered system that distinguishes between alcohol producers, wholesalers, and retailers. *Id.* ¶ 39 (referencing 27 U.S.C. § 205)). According to Plaintiffs, "the three-tier system provides that (1) producers cannot either wholesale or retail alcohol, (2) wholesalers cannot be producers or retailers, and (3) retailers cannot wholesale or produce alcohol." *Id.* Instead, "manufacturers (tier 1) sell to licensed importers, distributors and control boards." *Id.* "Licensed importers and distributors (tier 2) act in cooperation with the federal and state governments; they help ensure that alcohol beverage taxes are reliably collected. The prohibition against tier 2 entities owning or operating retailers (those at tier 3) ensures that suppliers cannot coerce retailers to favor their brands." *Id.* "Licensed outlets like liquor stores, bars or restaurants (tier 3) ensure that alcohol is sold to those who are of legal age to purchase it." *Id.* Plaintiffs explain that "this three-tier regulatory system provides for 'checks and balances' to the way alcohol is distributed and sold throughout the system, from one licensed tier to another. These . . . rules dictate that no individual or entity (except the state regulator itself) is allowed to own and operate more than one tier of the system." *Id.*

Glazer's Wholesale Distributors, a predecessor to Glazer's, Inc., was founded in 1933, about the time of the repeal of Prohibition, and has, in various corporate forms, distributed food, drink, and tobacco products on a wholesale basis in various states throughout the country. SAC ¶ 18. In 1968, Southern Wine and Spirits of America, Inc.[1] began distributing and selling food, drink, and tobacco products on a wholesale basis. *Id.* ¶ 19. In 2016, Defendant Southern Wine & Spirits of America, Inc. merged with Glazer's, Inc. to form Defendant Southern Glazer's Wine & Spirits, LLC, which is a wholesaler of food, drink, and tobacco products. *Id.* ¶ 20. Plaintiffs refer to Southern Wine & Spirits of America, Inc. and Southern Glazer's Wine & Spirits, LLC

---

[1] The case caption in this case names "Southern Glazer Wine & Spirits of America, Inc." as a defendant, but the text of the SAC refers to "Southern Wine & Spirits of America, Inc." *See, e.g.,* SAC ¶¶ 19-20. The Court assumes that these names refer to the same corporate entity.

Case No. 17-CV-03805-LHK
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

collectively as "Southern Glazer." *Id.* ¶ 1. Plaintiffs allege that Southern Glazer is the largest

wine and spirits distributor in the United States, with more than 20,000 employees. *Id.* ¶ 23.

Plaintiffs allege that Southern Glazer distributes more than 150 million cases of wine and spirits

annually to 350,000 retail and restaurant accounts across 44 states, the District of Columbia,

Canada, and the Caribbean. *Id.*

      Plaintiffs are California-based businesses that "had accounts with Southern Glazer,

wherein they and authorized agents thereof were permitted to purchase liquor from Southern

Glazer using [Plaintiffs'] respective liquor licenses (issued by the California Department of

Alcoholic Beverage Control) and/or [their] Southern Glazer-issued account numbers." *Id.* ¶ 14.

Plaintiffs seek to represent two putative classes, a California class and a national class. *Id.* ¶ 32.

The California class is composed of "[a]ll persons/entities, within the State of California, who had

an account with Southern Glazer Glazer's Wine & Spirits, LLC [*sic*] and/or Southern Glazer Wine

& Spirits of America, Inc. within the applicable time period." *Id.* The national class is similarly

defined, except that the geographical scope encompasses the United States rather than only

California. *Id.* Plaintiffs do not define "the applicable time period."

      Plaintiffs allege that applying for a California liquor license "includes submission of

documentation of business status, an individual financial affidavit, totals of investments in the

business, banking information, and undergoing a background check." *Id.* ¶ 49. If the application

is granted, a "unique liquor license number is then issued for the particular bar/restaurant/liquor

store. In California this number is registered with the State Board of Equalization, so that the

Board can collect taxes on retail sales of alcohol." *Id.* To become a Southern Glazer customer, a

liquor license holder was "required to submit evidence of [its] liquor license[]," as well as a credit

application, personal guarantee, "Appendix A California resale certificate," "optional e-check

authorization/autopay and proof of deliver forms," a "Direct Warehouse Sales Authorization form,

which lists the authorized purchases for the retailer," and "[c]opies of state-issued beverage

licenses and Certificates of Resale." *Id.* ¶ 51. "Once these papers were approved, each class

member was given a unique account number which the class members could then use to purchase

liquor from Southern Glazer." *Id.* ¶ 52. Plaintiffs allege that Southern Glazer agreed in writing that "[e]xcept as agreed herein, Southern Glazer will not disclose your private information unless it is required to do so by law, to verify your continuing financial stability or in an effort or action to collect your unpaid debt to Southern Glazer." *Id.* ¶ 55. Plaintiffs also identify eleven other "additional express and/or implied promises by Southern Glazer upon which class members reasonably relied," such as "Southern Glazer would not add so-called authorized purchasers to class members' Direct Warehouse Sales Authorization to Purchase Forms, without class members' knowledge and consent." *Id.* ¶ 57. Plaintiffs do not specify which of these eleven other promises were express and which were implied.

Citing various court filings and press releases, Plaintiffs allege that Southern Glazer has been fined, "punished [for,] and/or charged" with various misdeeds, including racial discrimination, illegal kickbacks, unlawful carrying charges, and anti-competitive conduct. *Id.* ¶¶ 61-63.

With respect to Plaintiffs and the putative class, Plaintiffs allege that "Southern Glazer committed various unlawful and/or unfair business practices, including, but not necessarily limited to" the following list, which Plaintiffs offer without elaboration:

    a. Adding so-called authorized purchasers on Representative Plaintiffs' and class members' Direct Warehouse Sales Authorization to Purchase Forms, without their knowledge or consent;

    b. Leading Representative Plaintiffs and members of both classes to misreport their tax obligations to state and/or federal taxing authorities;

    c. Compelling Representative Plaintiffs and members of both classes to restate their tax obligations for prior tax cycles to state and/or federal taxing authorities, and to incur time and expense in retaining legal and financial professionals therefor;

    d. Selling liquor to bars/restaurants/clubs that do not possess liquor licenses using Representative Plaintiffs' and class members' liquor license numbers and/or their Southern Glazer account numbers;

    e. Singling out customers who pay C.O.D. and/or are known to maintain poor accounting practices (e.g., for "ghost shipping" and/or "phantom invoicing"

4

practices), causing them monetary damages and/or tax liabilities;

f.  Selling liquor to third-parties on Representative Plaintiffs' and class members' accounts at lower prices than to legitimate/licensed purchasers;

g.  Selling liquor to different parties at different prices, in violation of federal alcohol regulations and state and/or federal law;

h.  Permitting its officers, managers, agents and/or other employees to purchase liquor on Representative Plaintiffs' and class members' licenses/accounts, using cash and/or charging class members for the liquor, then storing (i.e., not delivering it) in order to meet quotas (and in violation of 4 CCR § 76);

i.  Permitting its officers, managers, agents and/or other employees to give away liquor, by pricing such at $.01;

j.  Permitting its officers, managers, agents and/or other employees to give away liquor by printing sample labels for full regular-sized bottles;

k.  Permitting its officers, managers, agents and/or other employees to purchase liquor using class members' liquor license numbers and/or their Southern Glazer account numbers, temporarily store the liquor (in violation of 4 CCR § 76), then returning the liquor later, in order to meet quotas, oftentimes without refunding the money;

l.  Using so-called "A Forms" (which lack bar codes and invoice numbers and are, thus, nearly impossible to locate) to facilitate liquor transactions, in violation of 4 CCR § 17;

m.  Not providing annual invoices, unless requested, in order to conceal the practices cited herein;

n.  Permitting its officers, managers, agents and/or other employees to purchase liquor "off-invoice";

o.  Permitting its officers, managers, agents and/or other employees to sell "off-invoice" liquor to retailers without licenses, or to retailers who will then resell the liquor to other retailers, in violation of state and/or federal law;

p.  Permitting its officers, managers, agents and/or other employees to sell "off-invoice" liquor to private individuals, in violation of state and/or federal law;

q.  Threatening to cut off supplies to customers who do not buy a sufficient quantity of liquor, or liquor of select varieties;

r.  Refusing to sell products to class members without them purchasing "tie-ins" (other types of liquor than those the customer wishes to purchase);

5

s.  Giving kickbacks, free samples and other unlawful incentives to restaurants/retailers (in violation of, *inter alia*, 4 CCR § 106), in order to keep them from reporting the violations specified above;

t.  Working and/or conspiring with third-parties to allow for the unfair/unlawful practices above and below;

u.  Ignoring complaints from sales representatives and/or retailers about the unfair and unlawful business practices detailed herein[;]

v.  Unlawfully manipulating a "will call" system to effectuate unauthorized purchases and deliveries, collecting money from retailers vis-à-vis an automatic payment system.

*Id.* ¶ 65(a)-(v).

Plaintiff Arena alleges that it "found that it had been assessed thousands of dollars in taxes for liquor supposedly purchased, but not actually purchased, from Southern Glazer." *Id.* ¶ 25. Plaintiff Vine and Barrel alleges that it received "falsified sales invoices" from Southern Glazer. *Id.* Neither Plaintiff offers any other details related to these allegations.

**B.    Procedural History**

James Nguyen originally filed this case on July 5, 2017. ECF No. 1. Nguyen alleged that he was the liquor license holder on behalf of Arena Restaurant and Lounge. *Id.* at 4. On August 22, 2017, Defendants filed a motion to dismiss. ECF No. 13. On September 5, 2017, Nguyen filed a first amended complaint as of right. ECF No. 16. Accordingly, the Court denied Defendants' motion to dismiss the original complaint as moot on September 6, 2017. ECF No. 17.

On September 19, 2017, Defendants filed a motion to dismiss the first amended complaint. ECF No. 19. Nguyen opposed the motion to dismiss on October 3, 2017. ECF No. 22. Defendants filed a reply on October 9, 2017. ECF No. 25. On December 19, 2017, the parties filed a stipulation to allow Nguyen to file a second amended complaint to change and add plaintiffs. ECF No. 28. The Court granted the stipulation that same day. ECF No. 29.

Accordingly, the second amended complaint was filed on December 19, 2017. ECF No. 30 ("SAC"). On December 20, 2017, the Court denied as moot the motion to dismiss the first amended complaint. ECF No. 31. Defendants filed a motion to dismiss the SAC on January 3,

6

2018. ECF No. 32. Plaintiffs filed an opposition on January 17, 2018, in which Plaintiffs pointed out that Defendants' motion failed to comply with Civil Local Rule 7-4(a)(2), which requires briefs longer than ten pages to include tables of contents and authorities. ECF No. 35 ("Opp'n"). On January 18, 2018, Defendants filed the instant amended motion to dismiss the SAC, in which Defendants added tables of contents and authorities in order to comply with the Civil Local Rule 7-4(a)(2). ECF No. 36 ("Mot."); ECF No. 37 (Declaration of Daniel Purcell stating that the only difference between the original motion and the amended motion is the addition of the tables of contents and authorities). Accordingly, the Court DENIES AS MOOT the motion to dismiss at ECF No. 32. On January 24, 2018, Defendants filed a reply. ECF No. 38 ("Reply").

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe [s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

United States District Court
Northern District of California

motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in

the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted

inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183

(9th Cir. 2004).

**B.      Motion to Dismiss Under Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be stated with

particularity. Specifically, the Ninth Circuit has held that averments of fraud "be accompanied by

'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp.*

*USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

1997)). When an "entire claim within a complaint[] is grounded in fraud and its allegations fail to

satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the . . .

claim." *Id.* at 1107. The Ninth Circuit has recognized that "it is established law in this and other

circuits that such dismissals are appropriate," even though "there is no explicit basis in the text of

the federal rules for the dismissal of a complaint for failure to satisfy 9(b)." *Id.* A motion to

dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional

equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

**C.      Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether

to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

"shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.*

*Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks

omitted). When dismissing a complaint for failure to state a claim, "a district court should grant

leave to amend even if no request to amend the pleading was made, unless it determines that the

pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal

United States District Court
Northern District of California

quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Plaintiffs assert eleven claims: (1) promissory fraud, (2) below cost sales, (3) loss leader sales, (4) secret rebates, (5) unlawful threats and intimidation, (6) constructive trust, (7) breach of fiduciary duty, (8) common law fraud, (9) unfair business practices, (10) breach of contract, and (11) breach of the implied covenant of good faith and fair dealing. SAC ¶¶ 68-149. Defendants argue that the first and eighth claims should be dismissed based on the economic loss doctrine and failure to plead fraud with particularity as required by Rule 9(b). Defendants argue that the second and third claims should be dismissed because only competitors have standing to bring such claims. Defendants assert that the second, third, fourth, and fifth claims should be dismissed for failure to plead an adequate factual basis under *Iqbal*. Defendants argue the sixth claim for constructive trust should be dismissed because it is actually a remedy and not a claim for relief. Defendants contend the seventh claim for breach of fiduciary duty fails because Defendants owe no such duty to their customers as a matter of law. Defendants argue that the ninth claim under California's Unfair Competition Law is derivative of Plaintiffs' other insufficiently stated claims and so fails as a result. Defendants argue the tenth claim for breach of contract should be dismissed for failure to sufficiently plead the details of the relevant contract. Finally, Defendants assert that the eleventh claim for breach of the implied covenant should be dismissed as entirely redundant of the contract claim. The Court addresses these arguments in turn.

### A. Fraud-Related Claims (Claims One and Eight)

Two of Plaintiffs' claims involve fraud: the first claim for promissory fraud and the eighth claim for common law fraud. Fraud-based claims sound in tort. *JMP Securities LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012). Defendants argue that Plaintiffs fraud-based claims are barred by the economic loss rule and are not alleged with

9

sufficient particularity under Rule 9(b).  Mot. at 7-10.

Under the economic loss rule, a plaintiff suffering only economic damages "may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations."  *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000), *superseded by statute on other grounds as recognized in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070 (2003); *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) ("[The economic loss rule] requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.").  The purpose of the rule is to "prevent[] the law of contract and the law of tort from dissolving one into the other."  *Robinson Helicopter Co.*, 34 Cal. 4th at 988 (internal quotation marks and citation omitted).  "Courts have applied the economic loss rule to bar fraud claims where the damages plaintiffs seek are the same economic losses arising from the alleged breach of contract."  *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 991 (E.D. Cal. 2012) (internal quotation marks omitted).

Courts have recognized exceptions to the economic loss rule where (1) a "special relationship" exists between the plaintiff and the defendant, *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979); *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958), or (2) the conduct "violates a duty independent of the contract arising from principles of tort law," *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (citation omitted).  Neither party contends that the special relationship exception applies.  Thus, only the independent duty exception is at issue here.  The independent duty exception to the economic loss rule applies where the defendant's conduct "violates a duty independent of the contract arising from principles of tort law."  *Erlich*, 21 Cal. 4th at 551.  The California Supreme Court has recognized an independent duty outside the insurance context (1) where a defendant's actions that constituted breach of contract also caused physical injury; (2) for wrongful discharge in violation of fundamental public policy; or (3) where the plaintiff was fraudulently induced to enter a contract.  *Erlich*, 21 Cal. 4th at 551-52; *see also Oracle USA, Inc. v. XL Glob. Servs., Inc.*, No. C 09-537 MHP, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009)

Case No. 17-CV-03805-LHK
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

("Exceptions have been permitted only where: a breach of duty causes a physical injury; the covenant of good faith and fair dealing is breached in an insurance contract; an employee was wrongfully discharged in violation of a fundamental public policy; or a contract was fraudulently induced." (citing *Butler-Rupp v. Lourdeaux*, 134 Cal. App. 4th 1220 (2005)).

"[F]raudulent inducement is a well-recognized exception to the economic loss rule." *Lee v. Fed. St. L.A.*, No. 2:14-cv-6264-CAS(SSx), 2016 WL 2354835, at *9 (C.D. Cal. May 3, 2016); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1188 (C.D. Cal. 2009) ("[I]t has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for fraud." (quoting *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996)). Fraudulent inducement occurs when "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996).

Here, Plaintiffs clearly frame both their promissory fraud and common law fraud claims as arising from a breach of express contract terms. Specifically, Plaintiffs allege that "Southern Glazer agreed in writing to every class member that '[e]xcept as agreed herein, Southern Glazer will not disclose your private information unless it is required to do so by law, to verify your continuing financial stability or in an effort or action to collect your unpaid debt to Southern Glazer.'" SAC ¶ 55. Plaintiffs allege that notwithstanding this promise, Defendants used Plaintiffs' private account information to sell liquor to unlicensed third parties. *Id.* ¶¶ 69, 75, 122. Plaintiffs allege that Defendants' conduct caused Plaintiffs "to suffer economic losses and other general and specific damages." *Id.* ¶¶ 75 (promissory fraud claim), 127 (common law fraud claim). Plaintiffs assert the same underlying facts and the same damages in their breach of contract claim. *See id.* ¶¶ 137-41. Thus, Plaintiffs' promissory fraud and common law fraud claims are barred by the economic loss doctrine unless an exception applies. *See Foster Poultry Farms*, 868 F. Supp. 2d at 992.

Plaintiffs contend that the fraudulent inducement exception to the economic loss rule

applies here based on their promissory fraud allegations. Opp'n at 13-14. The California

Supreme Court has held that fraudulent inducement can exist where a contract is induced through

promissory fraud. *See Lazar*, 12 Cal. 4th at 638. However, district courts in this circuit are split

on whether promissory fraud alone may give rise to the fraudulent inducement exception to the

economic loss rule. Some district courts in this circuit have held that promissory fraud is

insufficient if the promise becomes part of an enforceable contract. *See, e.g.*, *JMP Sec.*, 880 F.

Supp. 2d at 1044 (holding that exceptions to the economic loss doctrine do not apply where the

fraudulent misrepresentations are "also alleged to be a stand-alone contract").

In contrast, other district courts have held that an adequately pled promissory fraud claim

that induces the formation of a contract is sufficient to trigger the fraudulent inducement exception

to the economic loss rule. *See Joli Grace, LLC v. Country Visions, Inc.*, No. 2:16-1138 WBS

EFB, 2016 WL 6996643, at *9 n.6 (E.D. Cal. Nov. 30, 2016) (rejecting argument "that the

economic loss rule will always preclude recovery of fraud claims when the misrepresentations

arose from the underlying contract and caused the injured party to enter into a contract" because

"such a view ignores the California Supreme Court's position that the economic loss rule does not

preclude recovery for fraudulent inducement"); *J2 Cloud Servs., Inc. v. Fax87*, No. 13-5353 DDP

(AJWx), 2016 WL 6833904, at *4 (C.D. Cal. Nov. 18, 2016) (finding claim not barred by the

economic loss rule because promissory fraud cause of action was adequately alleged).

"Th[is] Court follows the latter cases, which more closely follow the California Supreme

Court's *Lazar* holding that, if the promise that forms the basis of a promissory fraud cause of

action 'is enforceable [as a contract], the [plaintiff] . . . has a cause of action in tort as an

alternative at least, and perhaps in some instances in addition to his cause of action on the

contract.'" *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-716-LHK, 2017 WL 1164296, at

*6 (N.D. Cal. Mar. 29, 2017) (quoting *Lazar*, 12 Cal. 4th at 645 (citations and internal quotation

marks omitted)). Thus, the economic loss doctrine will not bar Plaintiffs' fraud-based claims if

Plaintiffs' promissory fraud claim is adequately pled. *Cf. Robinson Helicopter*, 34 Cal. 4th at 993

(recognizing that heightened pleading standard for fraud applies to exception to economic loss

rule).  The Court turns now to whether Plaintiffs' fraud-based claims are adequately pled.

Federal courts deciding state law fraud claims look to state law for the elements of a fraud claim but also apply Rule 9(b)'s heightened pleading standard.[2]  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  "This means that allegations of fraud must be stated with 'specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"  *SVGRP LLC v. Sowell Financial Servs., LLC*, No. 5:16-cv-7302-HRL, 2017 WL 1383735, at *4 (N.D. Cal. Apr. 18, 2017) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).  To survive a motion to dismiss, "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Swartz*, 476 F.3d at 764 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

To state a claim for fraud under California law, a plaintiff must allege: (1) a misrepresentation (false representation, concealment, or non-disclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.  *Lazar*, 12 Cal. 4th at 638.  "Promissory fraud is a subspecies of fraud.  A plaintiff asserting a promissory fraud claim must plead and prove that the defendant made a promise to him that it had no intention of performing."  *SVGRP*, 2017 WL 1383735 at *4 (quoting *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 2d 1092, 1109 (C.D. Cal. 2015)); *see also Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1411 (2014) (explaining that to state a claim for promissory fraud under California law, a plaintiff must plead "that the promissor did not intend to perform at the time the promise was made, that the promise was intended to deceive and induce reliance, that it did induce reliance, and that this reliance resulted in damages").

Plaintiffs' promissory fraud and common law fraud claims fall far short of Rule 9(b)'s

---

[2] Even if Federal Rule of Civil Procedure 9(b) did not apply to state law claims, California law requires that "fraud must be pled specifically; general and conclusory allegations do not suffice." *Robinson Helicopter*, 34 Cal. 4th at 993.

Case No. 17-CV-03805-LHK
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

United States District Court
Northern District of California

requirement to plead fraud with specificity. The theory of falsity underlying both claims is that Defendants promised to keep Plaintiffs' account information confidential, but despite this promise Defendants allegedly used Plaintiffs' account information to make sales to third parties. *See* SAC ¶¶ 65, 69, 74-75, 122. However, Plaintiffs fail to plead any specific facts about these alleged third-party sales. The only facts in the SAC are the conclusory allegations that Defendants used Plaintiffs' liquor license numbers and/or their Southern Glazer account numbers to sell liquor to "bars/restaurants/clubs that do not possess liquor licenses." *Id.* ¶ 65(d). Plaintiffs do not allege who made the alleged third-party sales, when the sales were made, or what was sold. Nor do Plaintiffs identify the third parties. Plaintiffs argue that they will require discovery to specifically plead the facts of such fraudulent behavior. Opp'n at 7. However, Plaintiffs do not even allege any specific details about information that would already be under Plaintiffs' control, such as alleging that they had been billed or had paid for products that they did not order or receive.

Vague allegations that unspecified Southern Glazer employees used Plaintiffs' account numbers to sell an unspecified amount of liquor to unspecified parties during an unspecified time period are nowhere near "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz*, 476 F.3d at 764 (quoting *Bly-Magee*, 236 F.3d at 1019).

Perhaps attempting to avoid dismissal under Rule 9(b), Plaintiffs attach a number of declarations to their opposition. In these declarations, Plaintiffs offer more specific allegations about being billed for products they neither ordered nor received. *See, e.g.*, Declaration of Jason Jenkins, ECF No. 35-2; Declaration of Daniel Flores, ECF No. 35-3. However, the relevant question is whether Plaintiffs's SAC pleads with the particularly that Rule 9(b) requires. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Because the SAC fails to allege with specificity the conduct underlying Plaintiffs' theory

of falsity, Plaintiffs' claim for promissory fraud fails because Plaintiffs have not adequately alleged that Defendants failed to perform the promise to keep Plaintiffs' account information confidential. Similarly, Plaintiffs' common law fraud claim fails because Plaintiffs have not adequately alleged a misrepresentation. The Court GRANTS Defendants' motion to dismiss the first and eighth claims for promissory fraud and common law fraud. Moreover, because Plaintiffs have not adequately pled their promissory fraud claim, Plaintiffs do not qualify for the fraudulent inducement exception to the economic loss rule. Thus, the Court also dismisses Plaintiffs' first and eighth claims because they are barred by the economic loss rule. However, because the Court finds that Plaintiffs may be able to amend their complaint to adequately plead these claims and, relatedly, to establish that they qualify for the fraudulent inducement exception to the economic loss rule, the Court grants Plaintiffs leave to amend.

## B. Unfair Practices Act Claims (Claims Two, Three, Four, and Five)

Defendants argue that Plaintiffs lack statutory standing to bring their second claim for below-cost sales and third claim for loss-leader sales and that Plaintiffs have not adequately pled their second, third, fourth (secret rebates), and fifth (unlawful intimidation) claims. The Court addresses these arguments in turn.

### 1. Plaintiffs Are Not Barred as a Matter of Law From Bringing Claims Two and Three

Plaintiffs' second and third claims arise under California's Unfair Practices Act ("UPA"), California Business and Professions Code §§ 17000 *et seq.* Specifically, Plaintiffs' second claim is for below-cost sales in violation of § 17043, which makes it "unlawful for any person . . . to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition." Cal. Bus. & Prof. Code § 17043. Plaintiffs' third claim is for loss-leader sales in violation of § 17044, which prohibits the sale or use of any article or product as a "loss leader" as defined in § 17030. *Id.* § 17044. In turn, § 17030 defines "loss leader" as any article or product sold at less than cost where "the purpose is to induce, promote or encourage the purchase of other merchandise," "the

15

1    effect is a tendency or capacity to mislead or deceive purchasers or prospective purchasers," or

2    "the effect is to divert trade from or otherwise injure competitors." *Id.* § 17030.

3         Defendants argue that Plaintiffs lack statutory standing to bring their second and third

4    claims because "[c]ourts consistently have limited standing to assert section 17043 [and 17044]

5    claims to competitors of the defendant" and the facts of the SAC make clear that Plaintiffs and

6    Defendants are not competitors. Mot. at 11. In support of their assertion that only competitors

7    have standing to bring claims under §§ 17043 and 17044, Defendants cite a handful of cases that

8    describe these statutes as focused on preventing unfair competition among competitors. *See* Mot.

9    at 10-11 (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1154 (9th Cir. 2008);

10   *Eastman v. Quest Diagnostics Inc.*, 108 F. Supp. 3d 827, 838 (N.D. Cal. 2015); *Fisherman's*

11   *Wharf Bay Cruise Corp. v. Superior Court*, 114 Cal. App. 4th 309, 322 (2003); *W. Union Fin.*

12   *Servs., Inc. v. First Data Corp.*, 20 Cal. App. 4th 1530, 1539-40 (1993)). To be sure, an intent to

13   cause injury to competitors is an element of §§ 17043 and 17044 claims. *See Cal-Tech*

14   *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 174-75, 178 (1999).

15        However, Defendants overstate the support that these cases provide for their standing

16   argument. The question of non-competitor standing was not presented in *Sybersound*,

17   *Fisherman's Wharf*, or *Western Union*, all of which were competitor cases. *See Sybersound*, 517

18   F.3d at 1140; *Fisherman's Wharf*, 114 Cal. App. 4th at 314; *W. Union*, 20 Cal. App. 4th at 1532.

19   Unlike these cases, the defendant in *Eastman* made the same standing argument that Defendants

20   assert here. *Eastman*, 108 F. Supp. 3d at 838 ("Quest contends that th[e §§ 17043 and 17044]

21   claim[s] fail[] because the UPA protects competitors, not consumers."). However, the court in

22   *Eastman* did not take a position on that argument. Instead, the court "assum[ed] that injury to

23   consumers (as opposed to injury to competitors) is actionable under the UPA" and proceeded to

24   dismiss the UPA causes of action on another ground. *Id.* Thus, none of the cases that Defendants

25   cite support their position.

26        Defendants' argument also ignores § 17070, which provides that "[a]ny person or trade

27   association may bring an action to enjoin and restrain any violation of this chapter and, in addition

28
                                                  16

thereto, for the recovery of damages." Cal. Bus. & Prof. Code § 17070. "Person," in turn, is

defined as "any person, firm, association, organization, partnership, business trust, company,

corporation or municipal or other public corporation." *Id.* §§ 17020-21. Thus, § 17070

undermines Defendants' contention that only competitors have standing to bring §§ 17043 or

17044 claims, because § 17070 plainly states that "any person" may bring such claims. Indeed,

this Court is aware of only one other court to have addressed this specific standing question, and

the court in that case rejected the argument that Defendants make here. Specifically, in *O'Shea v.*

*Epson America, Inc.*, No. CV 09-8063 PSG, 2010 WL 11459911 (C.D. Cal. Mar. 5, 2010), several

consumers brought a § 17044 claim against Epson, which makes printers and ink cartridges. *Id.* at

*1. Epson argued that the plaintiffs lacked prudential standing to bring a § 17044 claim "because

the interests protected by § 17044 are those of competitors." *Id.* at *7. In rejecting this argument,

the court reasoned "that Cal. Bus. & Prof. Code § 17070 provides that '*[a]ny person* or trade

association may bring an action to enjoin and restrain any violation of this chapter [which includes

§ 17044] and, in addition thereto, for the recovery of damages.'" *Id.* (emphasis and alterations in

original). The court went on, "since Plaintiffs are 'persons' who claim to have been injured as a

result of Epson's alleged misconduct, the Court finds that Plaintiffs have standing to sue under the

loss leader statute." *Id.* (citation omitted). This Court agrees. As such, the Court finds that

Plaintiffs are not barred as a matter of law from bringing §§ 17043 and 17044 claims. The Court

next addresses Defendants' argument that none of Plaintiffs' UPA claims are adequately pled

under *Iqbal*.

## 2. Plaintiffs' UPA Claims Are Not Adequately Pled

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain

statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677-78

(quoting Fed. R. Civ. P. 8(a)(2)). As the U.S. Supreme Court has explained, "the pleading

standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more

than unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*,

550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

For example, in *Twombly*, an antitrust case, the plaintiffs alleged that telephone carriers made an agreement to refrain from competing against one another. 550 U.S. at 551. Specifically, the plaintiffs pled that the carriers failed to pursue attractive business opportunities in competitors' markets and highlighted one carrier's CEO's statement that competing in the territory of another carrier "might be a good way to turn a quick dollar but that doesn't make it right." *Id.* Based on this statement and inferences from the carriers' behavior, the plaintiffs alleged on information and believe that the carriers had agreed not to compete with one another. *Id.* The U.S. Supreme Court held that the plaintiffs had not pled "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 557.

Similarly, in *Iqbal*, the plaintiff alleged that Attorney General John Ashcroft and FBI Director Robert Mueller "knew of, condoned, and willfully and maliciously agreed to subject [him] to harsh conditions of confinement as a matter of policy, solely on account of [his] religion, race, and/or national origin and for not legitimate penological interest." 556 U.S. at 680 (internal quotation marks omitted) (alterations in original). The plaintiff alleged that Ashcroft was the "principal architect" of this policy and that Mueller was "instrumental" in adopting and executing it. *Id.* at 680-81. The U.S. Supreme Court held that these allegations "amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim." *Id.* at 681. "As such, the allegations are conclusory and not entitled to be assumed true." *Id.* The U.S. Supreme Court explained that it "d[id] not reject these bald allegations on the ground that they are unrealistic or nonsensical." *Id.* Rather, "[i]t [was] the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitle[d] them to the

presumption of truth." *Id.*

Plaintiffs' UPA claims fare no better. The factual allegations underpinning each of Plaintiffs' UPA claims are contained in a list in paragraph 65 of Plaintiffs' SAC, in which Plaintiffs set forth twenty-two ways in which Defendants have allegedly violated the law. As a general matter, Plaintiffs' list is exactly the sort of "the-defendant-unlawfully-harmed-me accusation" that the U.S. Supreme Court ruled was insufficient in *Iqbal*. 556 U.S. at 678. Some of the assertions in this list are plainly legal conclusions, and as such are not entitled to the presumption of truth. *See Fayer*, 649 F.3d at 1064; SAC ¶ 65(s) (alleging that Defendants gave "kickbacks, free samples and other unlawful incentives to restaurants/retailers" to prevent them from reporting violations); SAC ¶ 65(t) (alleging that Defendants worked and/or conspired with third-parties to allow for the unfair/unlawful practices described elsewhere in the SAC).

Other allegations are conclusory factual assertions that are "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). For example, related to the below-cost and loss-leader sales claims, Plaintiffs allege that Defendants sold liquor to different parties at different prices and allowed Defendants' employees to give away liquor by pricing it at $.01. SAC ¶ 65(f), (i). Plaintiffs also allege that Defendants permitted Defendants' employees to buy liquor "off-invoice," although Plaintiffs do not explain what exactly "off-invoice" means. *Id.* ¶ 65(n). Related to the secret rebates claim, Plaintiffs allege that Defendants gave kickbacks, free samples, and other unlawful incentives to customers. *Id.* ¶ 65(s). With respect to the unlawful intimidation claim, Plaintiffs allege that Defendants threatened to cut off supplies to customers who did not buy enough liquor or liquor of specific varieties. *Id.* ¶ 65(q). However, Plaintiffs do not allege any specific instance of any of these practices occurring, nor do Plaintiffs explain their basis for believing that Defendants engaged in these practices. The conclusory allegations of a range of malfeasance are not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, the Court GRANTS Defendants' motion to dismiss the second, third, fourth, and fifth claims for failure to plead adequate factual support under *Iqbal*. Because Plaintiffs may be able to amend their complaint to

19

fix this deficiency, the Court affords Plaintiffs leave to amend. However, the Court cautions Plaintiffs that any amendment must also address other deficiencies identified in Defendants' motion that the Court does not reach here. *See, e.g.*, Mot. at 12 (arguing that to state a claim for below-cost sales, a plaintiff must plead the cost of the product at issue to the defendant and the defendant's sales prices).

## C.    Sixth Claim for Constructive Trust

Plaintiffs' sixth claim is for constructive trust. SAC ¶¶ 108-10. Defendants argue that this claim should be dismissed because a constructive trust is a remedy and not a claim for relief. Mot. at 13-14. Defendants are correct that California law treats a constructive trust "not [as] a substantive device but merely [as] a remedy." *Embarcadero Mun. Improvement Dist. v. County of Santa Barbara*, 88 Cal. App. 4th 781, 793 (2001); *see also Stansfield v. Starkey*, 220 Cal. App. 3d 59, 76 (1990) (stating that a constructive trust is not a cause of action, only a remedy). California courts dismiss counts that plead a constructive trust as a cause of action rather than a remedy. *See Stansfield*, 220 Cal. App. 3d at 76.

Moreover, even if a constructive trust were available as a cause of action, Plaintiffs have not adequately alleged what specific property Defendants are alleged to possess. *See id.* ("[S]pecific identifiable property is a prerequisite for [a constructive] trust and none was alleged."). Specifically, Defendants argue that the only specific allegation of harm in the SAC is that Plaintiffs overreported their tax liabilities to the State of California as a result of Defendants' conduct. Mot. at 14. Plaintiffs do not allege that Defendants wrongfully obtained any of Plaintiffs' property. Plaintiffs do not respond to Defendants' arguments about the constructive trust claim in their opposition. As such, Plaintiffs have abandoned their constructive trust claim. *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) (stating that a failure in an opposition to address arguments raised in a motion to dismiss constitutes abandonment of the claim, which results in dismissal with prejudice). Accordingly, the Court GRANTS Defendants' motion to dismiss the constructive trust claim with prejudice.

**D.    Seventh Claim for Breach of Fiduciary Duty**

Plaintiffs' seventh claim, for breach of fiduciary duty, is premised on its constructive trust claim. Specifically, Plaintiffs allege that Southern Glazer was a constructive trustee for Plaintiffs but "failed to act [as] a reasonably careful trustee/partner would have under similar circumstances." SAC ¶¶ 112, 114. Defendants argue that the breach of fiduciary duty claim should be dismissed because there is generally no fiduciary duty between a buyer and a seller in an arm's length transaction. Mot. at 14-15. Plaintiffs respond that Defendants were constructive trustees and breached their fiduciary duties by misusing Plaintiffs' liquor licenses to sell liquor to third parties. Opp'n at 20. Plaintiffs analogize to the intellectual property context, where California courts have allowed fiduciary duty claims to proceed where one party is entrusted with confidential material and misuses that material. Plaintiffs argue that Plaintiffs entrusted sensitive information (here, their financial and liquor license information) to Defendants for a particular use, but Defendants breached their duties by misusing the information. *Id.* at 21-22 (analogizing to *Ojala v. Bohlin*, 178 Cal. App. 2d 292 (1960), a case concerning a party's misuse of proprietary designs for a holster). Defendants reply that Plaintiffs' analogy is misplaced because liquor license numbers are public information and the "extension of credit by a vendor to a customer is a routine feature of commercial transactions in California and does not imply a 'special relationship' akin to the 'trustee and beneficiary, agent and principal, guardian and ward, and attorney and client' relationships that California courts have held impose fiduciary duties." Reply at 12-13.

The California Supreme Court has explained that "before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 221 (1983). "The relationship of seller to buyer is not one ordinarily vested with fiduciary obligation, even though sellers routinely make representations concerning their product, often on the basis of a claimed expert knowledge about its utility and value." *Id.* at 222. "In such transactions, the seller is held to the mores of the marketplace. A fiduciary, by contrast, assumes duties beyond those of mere

21

fairness and honesty in marketing its product—he must undertake to act on behalf of the beneficiary, giving priority to the best interest of the beneficiary." *Id.* Moreover, in *City of Hope National Medical Center v. Genentech, Inc.*, 181 P.3d 142, 151-52 (Cal. 2008), the California Supreme Court rejected the contention that a fiduciary relationship necessarily exists whenever "(1) one party entrusts its affairs, interests or property to another; (2) there is a grant of broad discretion to another, generally because of a disparity in expertise or knowledge; (3) the two parties have an 'asymmetrical access to information,' meaning one party has little ability to monitor the other and must rely on the truth of the other party's representations; and (4) one party is vulnerable and dependent upon the other." Such characteristics, the California Supreme Court explained, "are common in many a contractual arrangement, yet do not necessarily give rise to a fiduciary relationship." *Id.* at 152.

Here, Plaintiffs' allegation that Defendants owed Plaintiffs a fiduciary duty fails as a matter of law. Specifically, California law is clear that an arm's length commercial transaction does not give rise to a fiduciary relationship. *See Comm. On Children's Television*, 35 Cal. 3d at 222; *McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1398 (2005) ("Generally, there is no fiduciary owed duty in a purely commercial situation."). Plaintiffs have not alleged that anything about their relationship with Defendants created an obligation for Defendants to act in Plaintiffs' best interests. At most, Plaintiffs have alleged that Defendants misused Plaintiffs' liquor license and financial information by using it to sell liquor to third parties. However, unlike the intellectual property context cited by Plaintiffs, a buyer's entrusting basic financial information to a seller does not create a fiduciary relationship. If it did, nearly every arm's length commercial transaction would create fiduciary duties, but this clearly is not the law. *See McCann*, 129 Cal. App. 4th at 1398; *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 30-34 (2003) (rejecting argument that a "contractual right to contingent compensation in the control of another" creates a fiduciary relationship). Moreover, because the Court has dismissed Plaintiffs' constructive trust claim with prejudice, *see supra*, Plaintiffs cannot base their breach of fiduciary duty claim on the alleged constructive trust. Thus, because Plaintiffs' breach of fiduciary duty claim fails as a matter of law,

1    the Court GRANTS Defendants' motion to dismiss the breach of fiduciary claim with prejudice.

2    **E.      Ninth Claim for Unfair Business Practices**

3           Plaintiffs' ninth claim is for unfair business practices in violation of California's Unfair

4    Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.  See* SAC ¶¶ 129-35.  The

5    UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3)

6    fraudulent.  Each "prong" of the UCL provides a separate and distinct theory of liability.  *Lozano*

7    *v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  Plaintiffs title their ninth claim

8    "unfair business practices," which suggests that Plaintiffs do not assert claims under the unlawful

9    or fraudulent prongs of the UCL.  However, paragraphs 131 and 132 of the SAC reference

10   allegedly unlawful and fraudulent business practices.  As such, the Court construes Plaintiffs'

11   SAC as invoking all three prongs of the UCL.

12          The unlawful prong of the UCL prohibits "anything that can properly be called a business

13   practice and that at the same time is forbidden by law."  *Cel-Tech Commc'ns.*, 20 Cal.4th at 180,

14   (quotation marks and citations omitted).  "A business practice is unfair within the meaning of the

15   UCL if it violates established public policy or if it is immoral, unethical, oppressive or

16   unscrupulous and causes injury to consumers which outweighs its benefits."  *McKell v. Wash.*

17   *Mut., Inc.*, 142 Cal.App.4th 1457, 1473 (2006).  In determining whether a practice is unfair,

18   California courts examine the practice's impact on its alleged victim and balance that impact

19   against the reasons, justifications, and motives of the alleged wrongdoer.  *Id.*  To state a claim

20   under the fraudulent prong of the UCL, a plaintiff must show that members of the public are likely

21   to be deceived by the business practice or advertising at issue.  *Freeman v. Time, Inc.*, 68 F.3d

22   285, 289 (9th Cir.1995); *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 630 (2010).  A UCL

23   violation for fraudulent business practices is distinct from common law fraud and does not require

24   allegations of actual deception, reasonable reliance, and damage.  *Daugherty v. Am. Honda Motor*

25   *Co.*, 144 Cal. App. 4th 824, 838 (2006).  In addition, to have statutory standing under any prong of

26   the UCL, a plaintiff must demonstrate that it "suffered injury in fact and [ ] lost money or property

27   as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.

28

23

Plaintiffs' UCL claim fails for three reasons. First, to the extent that Plaintiffs' UCL claim is derivative of the other claims in the SAC that the Court dismisses in this order, the derivative UCL claim must also be dismissed. *See Avila v. Bank of Am.*, No. 17-cv-222-HSG, 2017 WL 4168534, at *5 (N.D. Cal. Sept. 20, 2017) (dismissing UCL claim to the extent it is derivative of other claim dismissed in same order). Second, to the extent that Plaintiffs' UCL claim is premised on allegations that are not derivative of the other dismissed claims, Plaintiffs have failed to plead sufficient factual support to satisfy Rule 8(a) and *Iqbal*, 556 U.S. at 677-78, (for the unlawful and unfair prongs) or Rule 9(b) (for the fraudulent prong). *See* Section III.B.2, *supra* (concluding that ¶ 65 of the SAC does not satisfy Rule 8(a) and *Iqbal*). Finally, Plaintiffs have not adequately established statutory standing because Plaintiffs have not sufficiently alleged that they suffered economic harm due to the alleged unfair, unlawful, or fraudulent business practices. Plaintiff Arena states that it was "assessed thousands of dollars in taxes for liquor supposedly purchased, but not actually purchased, from Southern Glazer." *Id.* ¶ 25. However, Arena does not allege that it actually paid more taxes than it owed. Plaintiff Vine and Barrel alleges that it received "falsified sales invoices" from Southern Glazer. *Id.* However, Vine and Barrel does not allege that these "falsified sales invoices" caused Vine and Barrel economic harm. Accordingly, the Court GRANTS Defendant's motion to dismiss the ninth claim for unfair business practices. Because Plaintiffs could conceivably amend their claims to fix these deficiencies, the Court grants Plaintiffs leave to amend.

## F.      Tenth Claim for Breach of Contract

Plaintiffs assert a breach of contract claim under the theory that Defendants promised to keep Plaintiffs' account and financial information confidential but nevertheless disclosed that information in order to sell liquor to unlicensed third parties. SAC ¶¶ 137, 139. Defendants argue the claim for breach of contract should be dismissed for failure to sufficiently plead the details of the relevant contract. Mot. at 16-17. Defendants also argue that Plaintiffs have failed to sufficiently allege a breach. Reply at 13-14. Plaintiffs respond that they incorporated the contract into their SAC by reference. Opp'n at 22-23.

24

To state a breach of contract claim under California law, a plaintiff must plead "a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." *McKell*, 142 Cal. App. 4th at 1489. Plaintiffs' SAC did not recount the relevant contract in detail. *See* SAC ¶¶ 55, 57, 137. Instead, Plaintiffs quoted one term that Defendants allegedly agreed to in writing, but Plaintiffs did not specify in what contract that term was found. *Id.* ¶ 55. Plaintiffs also alleged that unspecified agreements contained a range of "express and/or implied promises," but did not specify which promises were express and which were implied, nor did Plaintiffs identify the agreements that allegedly contained these promises. *Id.* ¶ 57. After Defendants filed their motion to dismiss the SAC, Plaintiffs filed a notice of errata stating that Plaintiffs inadvertently failed to attach Defendants' Application and Credit Agreement and other associated documents as an exhibit to the SAC. ECF No. 34. It is not clear whether Plaintiffs premise their breach of contract claim solely on Defendants' Application and Credit Agreement found at ECF No. 34-1 or whether their breach of contract claim is also based on the other unspecified agreements mentioned in paragraph 57 of the SAC. In any event, the Court need not reach the issue of whether the SAC adequately identifies the relevant contract or contracts because the Court concludes that Plaintiffs have not adequately pled a breach, as discussed below. However, Plaintiffs must specify the contracts upon which their breach of contract claim is based in any amended complaint.

As stated above, Plaintiffs' breach of contract claim must be dismissed for failure to plead sufficient factual support under Rule 8(a) and *Iqbal*, just like Plaintiffs' UPA and UCL claims. Specifically, Plaintiffs have not adequately alleged Defendants' breach. Plaintiffs allege that Defendants used their liquor license, Southern Glazer account, and financial information to sell liquor to unlicensed third parties. SAC ¶¶ 65(d), 139. However, Plaintiffs do not allege any specific instance of any of these practices occurring, nor do Plaintiffs explain their basis for believing that Defendants engaged in these practices or provide any other factual support. The conclusory allegation of unauthorized sales to third parties is not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, because Plaintiffs have not

25

adequately alleged the breach element of the breach of contract claim, the Court GRANTS

Defendants' motion to dismiss with leave to amend.

**G.     Eleventh Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs allege that the implied covenant of good faith and fair dealing "by giving away

confidential information, and allowing purchases to be made on class members' accounts/licenses

without the knowledge or consent of class members." SAC ¶ 146. Defendants argue that because

the good faith and fair dealing claim is entirely duplicative of the breach of contract claim, the

good faith and fair dealing claim "may be disregarded as superfluous as no additional claim is

actually stated." Mot. at 18 (quoting *Careau & Co. v. Sec. Pac. Business Credit, Inc.*, 222 Cal.

App. 3d 1371, 1393 (1990)). Plaintiffs respond that breach of contract and breach of the implied

covenant of good faith and fair dealing claims can both survive when the two claims are based on

different breaches. Opp'n at 24. Defendants reply that "Plaintiffs fail to identify any way in

which the factual basis for their claim for breach of the implied covenant of good faith and fair

dealing differs from the basis of their breach of contract claim." Reply at 15.

The Court agrees with Defendants. Where the "claim of breach of the implied covenant

relies on the same acts, and seeks the same damages, as [the plaintiff's] claim for breach of

contract," a court can dismiss the claim for breach of the implied covenant of good faith and fair

dealing as duplicative. *Bionghi v. Metro. Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358, 1370

(1999). Here, Plaintiffs' breach of contract and breach of the implied covenant of good faith and

fair dealing claims are premised on the same acts, namely, Defendants' use of Plaintiffs' liquor

license, account, and financial information to sell liquor to third parties. *Compare* SAC ¶¶ 137-40

(breach of contract claim) *with id.* ¶¶ 142-48 (breach of implied covenant of good faith and fair

dealing claim). Both claims also seek the same damages. *Compare id.* ¶ 141 (breach of contract

claim) *with id.* ¶ 149 (breach of implied covenant of good faith and fair dealing claim). As such,

the Court GRANTS Defendants' motion to dismiss the eleventh claim as duplicative of the breach

of contract claim with prejudice.

**IV.     CONCLUSION**

United States District Court
Northern District of California

For the foregoing reasons, the Court rules as follows:

- The first claim for promissory fraud is DISMISSED with leave to amend;
- The second claim for below-cost sales is DISMISSED with leave to amend;
- The third claim for loss-leader sales is DISMISSED with leave to amend;
- The fourth claim for secret rebates is DISMISSED with leave to amend;
- The fifth claim for unlawful threats and intimidation is DISMISSED with leave to amend;
- The sixth claim for constructive trust is DISMISSED with prejudice;
- The seventh claim for breach of fiduciary duty is DISMISSED with prejudice;
- The eighth claim for common law fraud is DISMISSED with leave to amend;
- The ninth claim for unfair business practices is DISMISSED with leave to amend;
- The tenth claim for breach of contract is DISMISSED with leave to amend; and
- The eleventh claim for breach of the implied covenant of good faith and fair dealing is DISMISSED with prejudice.

If Plaintiffs fail to file a third amended complaint within 30 days or fail to cure the deficiencies identified in this order or in any of Defendants' three motions to dismiss, the claims dismissed in this order will be dismissed with prejudice. Plaintiffs may not add new causes of action or new parties without a stipulation or leave of the Court.

**IT IS SO ORDERED.**

Dated: April 9, 2018

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 17-CV-03805-LHK
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT